United States District Court
Southern District of New York
----------------------------------X
JASON ROWLEY, SHELDON GILBERT, LAUREN
SUDEALL, AND MARIE CLAIRE LIM,

                    Plaintiffs,

          -against-                          00 Civ. 1793 (DAB)
                                             <u>MEMORANDUM & ORDER</u>

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, THE NEW YORK
DEPARTMENT OF CORRECTIONS, DETECTIVE
ROBERT WILLIAMSON, SERGEANT SCOTT
SWEENY, SERGEANT JOSEPH POLLACK,
DETECTIVE JOHN KATEHIS, DETECTIVE
RICHARD HEWITT, DETECTIVE DAVID NEDD,
and POLICE OFFICERS and CORRECTIONS
OFFICERS JOHN and JANE DOES #1-20,

                    Defendants.
----------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Plaintiffs Jason Rowley, Sheldon Gilbert, Lauren Sudeall and

Marie Claire Lim ("Plaintiffs") bring this civil rights action

for damages, pursuant to 42 U.S.C. § 1983, assault and battery,

false arrest and false imprisonment, malicious prosecution, and

negligent hiring, training, and retention of employment

services.[1]  The City of New York, the New York City Police

Department, the New York Department of Corrections, and various

named and unnamed police and corrections officers ("Defendants")

move for partial summary judgment as to three of the claims:

---

     [1] In their Amended Complaint, Plaintiffs also allege
violations of 42 U.S.C. § 1981, intentional infliction of
emotional distress, and negligent infliction of emotional
distress, which have since been withdrawn.

false arrest, malicious prosecution, and negligent hiring, training, and retention.  For the reasons stated below, Defendants' motion for partial summary judgment as to these three claims is DENIED in part and GRANTED in part.


## I. BACKGROUND

Shortly before midnight on January 10, 2000, Plaintiff Rowley was driving his two-door Toyota Camry in Manhattan, in the area of Union Square on 14th Street, with three of his coworkers. (Am. Compl. ¶¶ 2, 22; Pls.' 56.1 Stmt. ¶¶ 1, 2;  Defs.' 56.1 Stmt. ¶¶ 1, 2.)  Plaintiff Gilbert was in the front passenger seat and Plaintiffs Lim and Sudeall were in the back seat.  (Am. Compl. ¶ 2.)  Rowley and Gilbert are black, Lim is Filipino, and Sudeall is bi-racial.  (Id.)  Rowley pulled his car over at Union Square to let out the two passengers sitting in the back seat. (Am. Compl. ¶¶ 2, 24;  Pls.' 56.1 Stmt. ¶ 10.)

As the two women were preparing to exit, a yellow taxicab pulled in front of the car.  (Am. Compl. ¶¶ 2, 25;  Defs.' 56.1 Stmt. ¶ 11.)  According to Plaintiffs, a man jumped out of the taxi, and pointed a gun directly at the windshield.  (Am. Compl. ¶ 26;  Pls.' 56.1 Stmt. ¶¶ 38-41.)  Two other men also exited the yellow vehicle.  (Am. Compl. ¶ 27; Pls.' 56.1 Stmt. ¶ 40.)  The Plaintiffs allege that they "were frightened and believed their

2

lives were in danger." (Am. Compl. ¶ 33.)  According to Rowley,

he and others were screaming at the time, "like crying screaming,

like I am going to die screams, not specific words, but

screaming." (Rowley Dep. at 90.)  Rowley, who claims to have

thought he was being carjacked or the victim of a racially

motivated assault (Pls.' 56.1 Stmt. ¶ 46), proceeded to duck his

head behind the steering wheel, put his car in reverse, and drive

backwards "to escape." (Am. Compl. ¶ 34; Defs.' 56.1 Stmt. ¶ 16;

Pls.' 56.1 Stmt. ¶ 16.)  When he hit "an object" behind him, he

drove forward and "hit another object." (Am. Compl. ¶ 34.)  With

his head still lowered, Rowley proceeded to repeat the sequence

before stopping the vehicle. (Am. Compl. ¶ 34; Defs.' 56.1 Stmt.

¶ 20; Pls.' 56.1 Stmt. ¶ 20.)  When his car finally came to a

standstill, one of the individuals who had emerged from the

taxicab smashed the driver's side window. (Am. Compl. ¶ 35; Pls.'

56.1 Stmt. ¶ 51.)  According to Plaintiffs, a gun was held to

Rowley's head (Pls.' 56.1 Stmt. ¶¶ 26, 52) and Rowley was pulled

from the car through the smashed window. (Am. Compl. ¶¶ 36-37;

Pls.' 56.1 Stmt. ¶ 53.)

What seemed at the time to Plaintiffs to be a carjacking or

an assault, was actually a police stop.  The yellow taxicab was

in fact an undercover police unit, and the individual who pointed

the gun at the Camry was an undercover police officer dressed in

plainclothes. (Am. Compl. ¶¶ 2-3, 32.) Defendant Joseph Pollack
was riding in the undercover taxi vehicle with Defendants Robert
Williamson and John Katehis that night. (Defs.' 56.1 Stmt. ¶ 4;
Pls.' 56.1 Stmt. ¶ 4.) According to Defendant Pollack, the Camry
attracted his attention, so he ran the car's license plate
through a police computer inside his car, which indicated the
vehicle was stolen. (Defs.' 56.1 Stmt. ¶¶ 3, 5; Pls.' 56.1 Stmt.
¶ 5.) The officers decided to stop the car, and Pollack radioed
for a backup unit. (Defs.' 56.1 Stmt. ¶¶ 6-7; Pls.' 56.1 Stmt.
¶¶ 6-7.) The call was picked up by Defendant uniformed police
officers Scott Sweeney, David Nedd, and Richard Hewitt, who were
in an unmarked Ford Crown Victoria, which pulled in behind the
Camry. (Defs.' 56.1 Stmt. ¶¶ 8, 12, 15; Pls.' 56.1 Stmt. ¶ 8.)
The "object" Rowley hit behind him was the Crown Victoria and the
"object" that he hit in front of him was the taxicab. (Pls.'
56.1 Stmt. ¶¶ 17, 19.)

The men in the yellow taxi were not wearing police uniforms
(Defs.' 56.1 Stmt. ¶ 14), and Plaintiffs allege that the men did
not have badges identifying themselves as police officers, did
not inform the Plaintiffs that they were police officers, and
Plaintiffs further allege that none of them heard police sirens.
(Am. Compl. ¶¶ 28-31; Pls.' 56.1 Stmt. ¶ 15.)

According to Defendants, officers from both the cars

approached the Camry.  (Defs.' 56.1 Stmt. ¶ 13.)  Also according
to Defendants, while Rowley was moving his car backwards and
forwards, Defendant Pollack "was forced to jump over a concrete
barrier in order to avoid being killed or having his legs
crushed." (Defs.' 56.1 Stmt. ¶ 21.)  Defendants allege that
Defendant Sweeney had to jump over a barrier twice (id. at ¶ 22),
and that Defendant Hewitt "had to jump into a lane of traffic to
avoid being pinned between his car and the Camry." (Id. at ¶ 21.)
Defendant Nedd also was struck in the leg by Plaintiff's vehicle.
(Id. at ¶ 25.)  Plaintiffs dispute the seriousness of the danger
in which Defendants allege they were placed by Plaintiff Rowley's
actions.  Plaintiffs allege that Defendant Pollack was out of
harm's way, "but rashly jumped in front of the moving vehicle,
and started trying to pull [Plaintiff] Gilbert out of the car."
(Pls.' 56.1 Stmt. ¶ 21.)  Plaintiffs further allege that
Defendant Sweeney "hopped" over the concrete barrier instead of
being forced to jump over it.  (Id. at ¶ 22.)  Plaintiffs also
dispute whether the Camry came right at Defendant Hewitt, and
whether he was forced to jump into a lane of traffic.  (Id. at ¶¶
23-24.)  And finally, Plaintiffs dispute the seriousness of
Nedd's wound, claiming that his leg was merely "nicked." (Id. at
¶ 25.)

    Also disputed is the nature of the impact of Rowley's car

with the taxi and the Crown Victoria.  Plaintiffs describe the
impact with the Crown Victoria as a "bump" and the impact with
the taxi as an "abrupt stop."  (<u>Id.</u> at ¶¶ 17, 19, 20.)
Defendants characterize the impact as crashing into the Crown
Victoria and taxi.  (Defs.' 56.1 Stmt. ¶¶  16, 17, 19, 20.)

After he was removed from the vehicle, the officers
handcuffed Rowley and subsequently "hit, punched, kicked and hit
with a hard object," and cut his hand.  (Am. Compl. ¶¶ 38-41;
Pls.' 56.1 Stmt. ¶ 55.)  Plaintiff Gilbert also was forcibly
pulled from the car and allegedly beaten.  (Am. Compl. ¶¶ 42-47;
Pls.' 56.1 Stmt. ¶ 57.)  Specifically, Gilbert alleges he was
"punched and received many blows to his body and head from two
police officers while he was lying on the ground." (Am. Compl. ¶
44.)  Gilbert and Rowley's handcuffs caused them both pain.  (<u>Id.</u>
at ¶¶ 68-69.)  Police officers also ordered the backseat
passengers, Sudeall and Lim, to get out of the car. (Am. Compl.
¶¶ 51, 57; Pls.' 56.1 Stmt. ¶ 59.)  Both Sudeall and Lim were
handcuffed tightly causing "extreme pain."  (Am. Compl. ¶¶ 54-55,
59-60.)

Rowley's vehicle previously was stolen on November 6, 1999
and later was recovered by the police.  (Pls.' 56.1 Stmt. ¶¶ 71,
72.)  Rowley retrieved his car on November 19, 1999.  (<u>Id.</u> at ¶
74.)  According to Rowley, in December of 1999, Plaintiff Rowley

had lent his car to a friend, who was stopped by police officers on suspicion of the car being stolen, because the "alarm" on the car was still active.[2] (Id. at ¶¶ 75, 77.) However, those officers permitted Rowley's friend to call him and tell him the situation. (Rowley Dep. at 60-62.) Rowley ran to the scene and produced the documents that proved the car was his, that it had been stolen, and that he had reclaimed it the month before. (Id.) According to Rowley, the police at the time told him they would remove the alarm. ((Pls.' 56.1 Stmt. ¶ 77.)

After being handcuffed the night in question, all the Plaintiffs were transported to the 13th Precinct. (Defs.' 56.1 Stmt. ¶ 27; Pls.' 56.1 Stmt. ¶ 27; Am. Compl. ¶¶ 61, 66.) According to Rowley, he was bleeding profusely from his hand and a police officer or emergency medical technician helped him wash and bandage it at the precinct. (Am. Compl. ¶ 72.) All the Plaintiffs were charged with grand larceny auto. (Defs.' 56.1 Stmt. ¶ 28; Pls.' 56.1 Stmt. ¶ 28.) However, Defendants eventually learned that the vehicle was not in fact stolen. (Defs.' 56.1 Stmt. ¶ 29.) The precise time when Defendants learned that the car was not stolen is in dispute. Plaintiffs claim that Defendants discovered at the scene that the car

---

[2] An "alarm" on a car signifies that the car has been reported as stolen. (Pls.' 56.1 ¶ 5.)

7

belonged to Rowley. (Pls.' 56.1 Stmt. ¶¶ 29, 61-62.) Plaintiffs also claim that the Defendants were aware that computer information regarding stolen cars often is inaccurate. (Pls.' 56.1 Stmt. ¶ 78.) The Defendants voided the arrests of Gilbert, Sudeall and Lim, who were released from custody later that night. (Defs.' 56.1 Stmt. ¶ 30; Pls.' 56.1 Stmt. ¶ 30.) Defendants also dropped the charge of grand larceny auto against Plaintiff Rowley, but he was charged with reckless endangerment in the first degree "because of his actions with his vehicle." (Defs.' 56.1 Stmt. ¶¶ 31-32; Defs.' 56.1 Stmt. Exhbt C; Pls.' 56.1 Stmt. ¶¶ 31, 32.) According to Rowley, while he was kept in a cell, Defendant Williamson told him he would be charged with a felony. (Am. Compl. ¶ 73.) Plaintiff Rowley was released the following evening. (Defs.' 56.1 Stmt. ¶¶ 31-32; Pls.' 56.1 Stmt. ¶ 33.)

A complaint was filed in the Criminal Court of the City of New York, New York County, charging plaintiff Rowley with two misdemeanors: reckless endangerment and reckless driving. (<u>Id.</u> at ¶ 77.) The charges were dismissed on or about February 25, 2000. (<u>Id.</u> at ¶ 77.)

Four written notices of claim, sworn to by the Plaintiffs, were served upon the Defendants by personal delivery. (<u>Id.</u> at ¶ 78.) Plaintiffs filed an Amended Complaint on June 29, 2000, and Defendants filed an Answer on August 3, 2000. On May 31, 2002,

Defendants moved for partial summary judgment as to Plaintiffs'
claims for false arrest, malicious prosecution, and negligent
hiring, retention and training.  Plaintiffs opposed the motion
and Defendants submitted a reply memorandum of law in support of
partial summary judgment.  In a letter dated May 31, 2002,
Plaintiffs argued Defendants' reply memorandum raised new
arguments not raised in the motion papers and that the Court must
ignore those issues raised for the first time in the reply
memorandum. Defendants responded in a letter dated June 11, 2002,
and Plaintiffs responded to Defendants' letter the same day.


II.  DISCUSSION


A. Summary Judgment Standard


     The principles applicable to summary judgment are familiar
and well settled. Summary judgment may be granted only when there
is no genuine issue of material fact remaining for trial, and the
moving party is entitled to judgment as a matter of law. Fed. R.
Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-48 (1986); Corselli v. Coughlin, 842 F.2d 23, 25 (2d
Cir. 1988).  A material fact is one whose resolution would
"affect the outcome of the suit under governing law."  Anderson,

477 U.S. at 248; Corselli, 842 F.2d at 25.  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As a general rule, all ambiguities and all inferences drawn from the underlying facts must be resolved in favor of the party contesting the motion, and all uncertainty as to the existence of a genuine issue for trial must be resolved against the moving party. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see also LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).  As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate."  Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991).  Finally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L.Ed. 2d 105, 120 S. Ct. 2097 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L.Ed. 2d 202, 106

10

S. Ct. 2505 (1986)).

B. Issues Raised in Reply Memorandum and Footnotes

As an initial matter, the Court addresses two issues raised by Plaintiffs after the instant summary judgment motion was fully joined. The first pertains to Plaintiffs' claim that Defendants raised a new argument pertaining to qualified immunity for the first time in their reply memorandum. (Letter from Lahav to Chambers of 5/31/02.) The second pertains to whether Defendants' argument for dismissal of Plaintiffs Sudeall's and Lim's excessive force claims, was properly raised in the footnote of Defendants' memorandum of law. (<u>Id.</u>)

This Circuit has made clear it disfavors new issues being raised in reply papers. <u>See</u> <u>Keefe v. Shalala</u>, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995) (stating that normally the court "will not consider arguments raised for the first time in a reply brief"); <u>Knipe v. Skinner</u>, 999 F.2d 708, 711 (2d Cir. 1993) (stating that "[a]rguments may not be made for the first time in a reply brief"); <u>Nat'l Labor Relations Bd. v. Star Color Plate Serv.</u>, 843 F.2d 1507, 1510 n.3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new question] in its reply brief"); <u>United States v. Letscher</u>, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) (stating that a new argument is not a basis for

11

granting summary judgment "because arguments raised in reply papers are not properly a basis for granting relief"); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) (stating that new arguments first raised in reply papers in support of a motion for summary judgment will not be considered"); Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 (S.D.N.Y. 1997) (stating that a court need not consider arguments made for the first time in a reply brief).

Defendants characterize this prohibition on raising new issues in reply papers as "far from an absolute rule." (Letter from Weber to Chambers of 6/11/02 at 1.) Defendants cite McNamee v. City of New York, No. 98 Civ. 6275, 2002 WL 441177, 2002 U.S. Dist. LEXIS 4684, at *15 (S.D.N.Y. Mar. 21, 2002), as an example of a case in which a court granted a qualified immunity defense, even though it was first raised in reply papers. Not only does this decision go against the weight of authority in this Circuit, but the court in McNamee allowed the defense primarily because the plaintiff in that case failed to file a response to defendant's argument or otherwise communicate with the court for approximately six months. Id. at *15-16.

Defendants also assert that their arguments, raised for the first time in their reply, should be allowed because the Court can allow Plaintiffs to respond to any new issue by filing a

"sur-reply." See, e.g., Lee v. Coughlin, 26 F. Supp. 2d 615, 617, n.2 (S.D.N.Y. 1998) (allowing plaintiff a chance to submit a surreply to a new issue raised in defendant's reply). However, the court in Lee granted the filing of the surreply without explanation, and the argument raised in the surreply ultimately formed no basis for the Court's decision. Id.

Defendants alternatively argue that they are not raising new issues in their reply brief, that instead, they are addressing new issues Plaintiffs raised in their opposition papers (letter from Weber to Chambers of 6/11/02), which they assert is proper. See Bonnie & Co. Fashions v. Bankers Trust Co., 945 F. Supp. 693, 708 (S.D.N.Y. 1996) (stating that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party") (quoting Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992)). Defendants contend that Plaintiff Rowley raised the "novel concept" that he was falsely arrested because Defendants should have realized that his behavior was justifiable rather than reckless. (Letter from Weber to Chambers of 6/11/02.) Accordingly, Defendants argue that Plaintiffs "opened the door" to the qualified immunity defense by calling the reasonableness of Defendants' actions into question. Id.

The Court finds this argument unpersuasive.  Throughout
their Amended Complaint, Plaintiffs call the reasonableness of
Defendants' conduct into question, therefore it was not a new
material issue raised in opposition papers.  Accordingly,
Defendants' qualified immunity defense should have been raised
prior to the reply papers and shall not be considered.

As to an argument raised in a footnote, that Plaintiffs
Sudeall and Lim's excessive force claims be dismissed, this also
may not be properly considered.  See Diesel v. Town of Lewisboro,
232 F.3d 92, 110 (2d Cir. 2000) (stating that "[w]e do not
consider an argument mentioned only in a footnote to be
adequately raised or preserved for appellate review") (quoting
United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993)
(holding that "[t]he enormous volume of briefs and arguments
pressed on each panel of this court at every sitting precludes
[the Court from] scouring through footnotes in search of some
possibly meritorious point that counsel did not consider of
sufficient importance to include as part of the argument");
People United for Children, Inc. v. City of New York, 108 F.
Supp. 2d 275, 301 (S.D.N.Y. 2000) (excusing plaintiff's failure
to respond to defendant's argument in a footnote "where it might
have been overlooked").  Accordingly, because mere mention in a
footnote does not amount to raising an argument and it would be

unfair to penalize Plaintiffs for failing to respond to it, the
Court also declines to address Defendants' argument regarding
Plaintiffs Sudeall's and Lim's excessive force claims.


## C. False Arrest

Defendants move for summary judgment as to Plaintiffs' false
arrest claim arguing that the police officers had probable cause
to arrest Plaintiffs, which is a complete defense to the claim.
(Defs.' Mem. at 5.)  They argue that they had probable cause to
arrest all four Plaintiffs for grand larceny auto, because the
police computer showed Plaintiffs' vehicle as stolen, and they
had probable cause to arrest Rowley for Reckless Endangerment
First Degree because of his admitted acts of ramming his car
backwards and forwards.[3]  (Defs.' Mem. at 5-6.)  Plaintiffs argue
that Defendants lacked probable cause to arrest the Plaintiffs,
and even if there was probable cause to stop Plaintiffs' car,
Defendants' "seizure of plaintiffs was so extreme and dangerous
that it violated the Fourth Amendment."  (Pls.' Mem. Law at 5.)

A false arrest claim under New York law and pursuant to a §

---

[3] As stated in Section II, _supra_, Plaintiff Rowley was
arrested for reckless endangerment in the first degree and
subsequently was charged and prosecuted for reckless endangerment
in the second degree and for reckless driving.

1983 claim, requires that a plaintiff show (1) the defendant intended to confine the plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

However, "there can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer, 63 F.3d at 118 (citing Bernard, 25 F.3d at 102); see also Covington, 171 F.3d at 122 (stating that "probable cause to arrest constitutes justification and is a complete defense to an action for false arrest") (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999) (same); Greenfield v. City of New York, 2000 U.S. Dist. LEXIS 1164, No. 99 Civ. 2330, 2000 WL 124992 (S.D.N.Y. Feb. 3, 2000) (stating that probable cause defeats a false arrest claim). Whether or not probable cause existed "may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852.

Police officers have probable cause to arrest a person when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr, 180 F.3d at 414 (quoting Weyant, 101 F.3d at 852); see also Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (same) (quoting Singer, 63 F.3d at 119); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

Probable cause may exist even when it is based on inaccurate information, "so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard, 25 F.3d at 102 (citing Colon v. City of New York, 60 N.Y.2d 78 (1983)); see also Haussman v. Fergus, 894 F. Supp. 142, 147-48 (S.D.N.Y. 1995). A police officer is not required "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. NYC Transit Authority, 124 F. 3d 123, 128 (2d Cir. 1997). The existence of probable cause is based upon the totality of the circumstances at the time of the arrest. Bernard, 25 F.3d 98, 102 (citing Illinois v. Gates, 462 U.S. 213, 230, 76 L.Ed. 2d 527, 103 S. Ct. 2317 (1982).

1. Grand Larceny Auto

Examining the totality of the circumstances here, it appears that Defendant police officers relied solely on the admittedly inaccurate computer information that the car was stolen in arresting the four Plaintiffs for grand larceny auto. While the Court might agree that that information, without more, would give the police probable cause to investigate further, the Court cannot agree with Defendants that the action they took to investigate further was reasonable. Indeed, the precipitous surrounding of the car by unmarked vehicles and the rapid approach of undercover officers with drawn guns to the Plaintiffs is in marked contrast to the actions of the officers in December, 1999, where the police inquiry based on the alarm was merely that. The officers in December prudently gave Rowley an opportunity to show the car was his. Defendants' actions also are in marked contrast to the facts the defendants relied on Bernard, 25 F.3d 98, where there were multiple identifications of the defendant by agents and a cooperating witness prior to arrest.

In Colon v. City of New York, the Court of Appeals addressed the question of probable cause and stated:

> Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like

circumstances to believe plaintiff guilty.  A party may act with probable cause even though mistaken, for a mistake of fact as to the identity of a criminal may be consistent with probable cause if the party acted reasonably under the circumstances in good faith.  Conversely, the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.

60 N.Y. 2d 78, 82 (1983).

Lower state courts have addressed the question of false car alarms as a basis for probable cause to arrest.  In <u>People v. McElhaney</u>, 552 N.Y.S.2d 825, 827 (N.Y. Sup. Ct. 1990), the court held that "an arrest made in reliance on an incorrect computer-generated police report which shows that an automobile is stolen, because of police failure to cancel the alarm, is made without probable cause."  The criminal court in <u>People v. Jones</u> found that a three-month failure to correct or update police computer records regarding car alarms was unreasonable and unacceptable, because "a person, having once reported his car to be stolen and later having it recovered by the police, would be potentially subject to arrest and consequent search whenever driving in his automobile for the indefinite future."  443 N.Y.S.2d 298, 304 (N.Y. Crim. Ct. 1981).

Defendants point out that the Second Circuit has upheld an arrest based on a warrant later found to be improperly issued. <u>United States v. Towne</u>, 870 F.2d 880, 884-85 (2d Cir. 1989).

However, the facts of <u>Towne</u> are distinguishable from the instant case.  In <u>Towne</u>, the court found probable cause because the arresting officer learned of the warrant after he conducted a background check, personally contacted the sheriff's office of the county that issued the warrant--who confirmed that the warrant was still outstanding--and after he asked for and received a certified copy of the warrant.  <u>Id.</u> at 884.  Looking at all these factors, the Second Circuit agreed with the district court, which had concluded "that an officer of reasonable caution would conclude that the . . . charges were still pending and therefore that probable cause existed to arrest the defendant." <u>Id.</u>

The Court notes that the Supreme Court has warned of the problems of relying on technology, stating that the police may not rely on computer-based record keeping systems blindly and "[w]ith the benefits of more efficient law enforcement mechanisms comes the burden of corresponding constitutional responsibilities."  <u>Ariz v. Evans</u>, 514 U.S. 1, 18 (1995) (O'Connor, J., concurring).

The Court concludes that probable cause for arrest for grand larceny auto was lacking where, while the police may have had a good faith reason to investigate further, their chosen techniques

obliterated the Plaintiffs' chance of avoiding arrest as Plaintiff Rowley had in December, 1999. Accordingly, summary judgment for Defendants is denied, and furthermore, the Court finds that judgment for the Plaintiffs on their false arrest and false imprisonment claim[4] is granted.

It has long been the law of this Circuit that "as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." First Financial Ins. Co. v. AllState Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999); see also Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991) (noting that a district court's sua sponte granting of summary judgment in favor of a non-moving party is "an accepted method of expediting litigation," as long as "the facts before the district court were fully developed so that the moving party suffered no procedural prejudice"); Lowenschuss v. Kane, 520 F.2d 255, 261 (2d Cir. 1975) ("We have sanctioned a sua sponte award by the court of

---

[4] The elements for false arrest and false imprisonment are identical in New York. See, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (noting false arrest and false imprisonment have the same elements); Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.").

summary judgment to a non-moving party where it appeared from the papers, affidavits and other proofs submitted by the parties that there were no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law.").

The Defendants, who moved for summary judgment on Plaintiffs' false arrest claim, have had a full and fair opportunity to establish their case and have provided no "indication that [they] might otherwise bring forward evidence that would affect the court's summary judgment determination." Coach Leatherware, 933 F.2d at 167. As the Court has before it all the facts necessary to find for the Plaintiffs, the Court grants summary judgment in Plaintiffs' favor on this claim sua sponte.


2. Reckless Endangerment First Degree

Defendants also argue that summary judgment should be granted on Plaintiff Rowley's claim for false arrest for reckless endangerment in the first degree. Defendants argue that they had sufficient probable cause to arrest Plaintiff for endangering the lives of the police officers by ramming his car backwards and forwards. (Defs.' Mem. Law at 5-6.) Plaintiff Rowley argues

that his actions were reasonable, and a justifiable response to the situation at the time, one he argues was created by the Defendants, and therefore the Defendants lacked probable cause to arrest him.  (Pls.'Mem. Law at 12-14.)

A person is guilty of reckless endangerment in the first degree "when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." NY CLS Penal § 120.25.  Defendants argue that Rowley's car struck an officer and "sent several others scrambling for their lives," in clear violation of this law.  (Defs' Mem. at 6.)  Plaintiff argues that his actions with the vehicle were in self-defense, because he believed he was being carjacked.  (Pls.' Mem. Law at 13-14.)  Further, he argues that his attempt to escape was reasonable within the statute, not reckless, which the Defendant officers should have realized. (Id.)

Defendants argue a plaintiff may prevail only if he or she can show that the officers knew that the person was acting in self-defense, and thus was not acting recklessly.  Defendants point to Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996), where the court found that probable cause was arguable where an officer arrested the plaintiff for reckless endangerment

for driving her car with the officer hanging out of the vehicle window, when she clearly did not know he was a police officer and feared he was an attacker, as evidenced by her shouting for help. Defendants argue that because Plaintiff Rowley "does not allege . . . that he said anything to defendants about not having realized that they were police officers," there is no question as to the existence of probable cause. (Defs.' Reply Mem. at 7.)

There is no dispute that the undercover officers emerged from an unidentified vehicle brandishing guns, without identifying themselves, and that the uniformed officers were in an unmarked car that pulled up behind the Plaintiff's car, possibly leading a reasonable person to believe he or she was under attack. But no jury could find that Rowley's actions were unquestionably in self defense. Plaintiff states that as the scene unfolded, he was screaming, "like I am going to die screams" (Pl. Rowley Dep at 90), but there is no indication that Plaintiffs ever screamed "help" or gave any verbal indication that they were unaware the Defendants were police officers. Furthermore, Rowley aggressively rammed his car back and forth while the police officers surrounded him on foot, putting them in danger.[5] There is no reason to think that these actions should

_____

[5] The Court notes that Plaintiffs paint a portrait of Rowley as a victim of aggressive police tactics that led him to panic

have put the Defendant officers on notice of their error regarding the stolen car, and lead them to conclude that Rowley was acting justifiably in self-defense.

Looking at the facts and all reasonable inferences flowing from those facts in the light most favorable to Plaintiff as this Court must, Plaintiff Rowley has failed to present sufficient evidence to raise a question whether his actions were reckless. His actions as viewed by the Defendant officers at the time clearly were reckless, which leaves no doubt that Defendants had probable cause to arrest him. Consequently, Defendants' motion for summary judgment on Rowley's false arrest claim for reckless endangerment first degree is granted.


## D. Malicious Prosecution Claim

Defendants also move for summary judgment as to Plaintiff Rowley's claim for malicious prosecution based on his being charged with reckless endangerment second degree and reckless driving. (Defs.' Mem. at 7.) Defendants assert that the

---

and fear for his life and attempt to escape at all costs. They leave out the troubling fact that Rowley blindly rammed his car back and forth in Union Square, and he very well might have hurt or killed the police officers involved, or innocent bystanders who frequent this well known public square at all hours of the day and night, to say nothing of his fellow passengers.

malicious prosecution claim is barred as a matter of law because they acted on the basis of probable cause. (Id.) Plaintiff Rowley, who conflates his arguments regarding false arrest and malicious prosecution, argues that "no reasonably prudent person could believe that Mr. Rowley had committed the crime of reckless endangerment by responding as he did to defendants' unprovoked, hyper-aggressive and terrifying assault." (Pls.' Mem. Law at 14.)

For a claim of malicious prosecution, "a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). Specifically, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against plaintiff; (2) that the proceeding was terminated in the plaintiff's favor; (3) an absence of probable cause for the proceeding; and (4) that the proceeding was instituted with malice. Id.; see also Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). As with false arrest, probable cause defeats a malicious prosecution claim. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). Accordingly, the Court will address whether there is a genuine issue of material fact as to the existence of probable cause, which would defeat this claim.

Defendants argue that the Court must evaluate whether Defendants had probable cause to prosecute at the time the prosecution was initiated. (Defs.' Mem. at 7 (citing <u>Coleman v. City of New York</u>, 177 F. Supp. 2d 151, 158 (S.D.N.Y. 2001)). Where, as here, a prosecution follows a warrantless arrest, the prosecution is not considered to have been commenced before the plaintiff is arraigned or indicted by a grand jury. <u>See</u> <u>Mejia v. City of New York</u>, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). The relevant determination is "whether there was probable cause to believe the criminal proceeding could succeed, and hence, should be commenced." <u>Id.</u>

The Court already determined that Defendants had probable cause to arrest Plaintiff Rowley for reckless endangerment in the first degree. However, even where probable cause exists at the time of arrest, "evidence could later surface which would eliminate that probable cause." <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143-144 (2d Cir. 2003) (quoting <u>Lowth</u>, 82 F.3d at 571 (internal quotation marks and citations omitted)); <u>see</u> <u>also</u> <u>Coleman</u>, 177 F. Supp. 2d at 158 (stating that "[u]nder New York law, even if there was probable cause to arrest an individual, that does not necessarily mean there is probable cause to prosecute him."). For probable cause to be eliminated, "the groundless nature of

the charge must be made apparent by the discovery of some
intervening fact." Id.; see also Meji, 119 F. Supp. 2d at 254.

Rowley was charged with and prosecuted for reckless
endangerment in the second degree, in violation of N.Y. Penal Law
§ 120.20, and for reckless driving, in violation of N.Y. Vehicle
and Traffic Law § 1212. There is no indication in the record,
nor does Plaintiff allege, that any new facts emerged from the
point when Rowley was arrested to when he was charged, which
might serve to exculpate him. Accordingly, as Defendants had
probable cause to arrest Plaintiff Rowley, and there was no
intervening fact that eliminated the probable cause element,
summary judgment is granted to Defendants on Plaintiff Rowley's
malicious prosecution claim.


E. Negligent Hiring, Training, and Retention

Finally, Defendants move for summary judgment as to
Plaintiffs' claim for negligent hiring, training, and retention
of the police officers involved in the incident. Defendants
present two bases for their motion for summary judgment: one,
that the claim is duplicative because Plaintiffs already are
suing under the theory of respondeat superior, which in New York
renders an employer liable for any torts caused by its employee;

28

and two, that the claim is barred because Plaintiffs failed to include it in their notices of claim.  (Defs.' Mem. Law at 8-9.)

"A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment."  <u>Colodney v. Continuum Health Partners, Inc.</u>, No. 03 CV 7276, 2004 U.S. Dist. LEXIS 6606, *27, 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004); <u>Murns v. City of New York</u>, No. 00 Civ. 9590, 2001 U.S. Dist. LEXIS 6287, *16-*17, 2001 WL 515201 (S.D.N.Y. May 16, 2001).  Where an employee acts within the scope of his or her employment, the employer generally is held liable for all the employees' torts under the doctrine of respondeat superior.  <u>See</u> <u>Niles v. Palmer</u>, No. 97 Civ. 7573, 1999 U.S. Dist. LEXIS 17759, *40 n.6, 1999 WL 1419042 (S.D.N.Y. Oct. 26, 1999) (holding an employer liable where "the employee acted within the scope of his or her employment such that the employer can be found to have ratified the tortious act") (citing <u>Dykes v. McRoberts Protective Agency, Inc.</u>, 680 N.Y.S.2d 513, 514 (1st Dep't 1998) and <u>Jonas v. Faith Properties, Inc.</u>, 634 N.Y.S.2d 323, 325 (4th Dep't 1995)).  Accordingly, under the theory of respondeat superior an employer is liable for any damages caused by an employee's negligence, and "no claim may proceed against the employer for negligent hiring or retention."  <u>Karoon v. New York City Transit Auth.</u>, 659 N.Y.S.2d 27, 29 (1st Dep't 1997);

29

see also Murns, 2001 U.S. Dist. LEXIS 6287, at *16-*17; Rossetti
v. Board of Educ., 716 N.Y.S.2d 460, 462 (3d Dep't 2000); Liddell
v. Slocum-Dickson Med. Group, P.C., 710 N.Y.S.2d 278, 278 (4th
Dep't 2000). The Karoon court reasoned that "if the employee was
not negligent, there is no basis for imposing liability on the
employer, and if the employee was negligent, the employer must
pay the judgment regardless of the reasonableness of the hiring
or retention or the adequacy of the training." 659 N.Y.S.2d at
29. While Karoon only refers to negligent acts by an employee,
the doctrine of respondeat superior applies to intentional and
unintentional torts that fall within the scope of employment.
See Dykes v. McRoberts Protective Agency, Inc., 680 N.Y.S.2d 513,
514 (1st Dep't 1998) (noting that an employer may be liable under
the doctrine of respondeat superior for both intentional and
negligent torts of an employee); Young Bai Choi v. D & D
Novelties, Inc., 157 A.D.2d 777, 550 N.Y.S.2d 376, 377 (2d Dep't
1990) ("An employer is liable, under the doctrine of respondeat
superior, for a tort committed by his servant while acting within
the scope of his employment . . . . Intentional torts as well as
negligent acts may fall within the scope of employment.") (citing
Mott v. Consumers' Ice Co., 73 N.Y. 543, 547 (1878)); Garcia v.
City of New York, 478 N.Y.S.2d 957, 958 (2d Dep't 1984) (stating
that intentional tort by a police officer may be within the scope

of employment if an officer is engaged in police business),
aff'd, 493 N.Y.S.2d 127 (1985); Greenfield v. City of New York,
No. 99 Civ. 2330, 2000 U.S. Dist. LEXIS 1164, at *34-35, 2000 WL
124992 (S.D.N.Y. Feb. 3, 2000); Niles v. Palmer, No. 97 Civ.
7573, 1999 U.S. Dist. LEXIS 17759, at *40 n.6 (S.D.N.Y. Oct. 26,
1999).

　　　　Normally the question of whether a defendant employee
was acting within the scope of his or her employment depends
heavily on the facts and circumstances of the particular case,
and thus is appropriate for a jury. See, e.g., Riviello v.
Waldron, 47 N.Y.2d 297, 302-03 (N.Y. 1979).  But where a
defendant employer admits its employees were acting within the
scope of their employment, an employer may not be held liable for
negligent hiring, training, and retention as a matter of law.
See Kramer v. City of New York, No. 04 cv 106, 2004 U.S. Dist.
LEXIS 21914, *37, 2004 WL 2429811 (S.D.N.Y. Nov. 1, 2004)
(holding that where City stated that the individual defendants
were employed by it on the date in question and acted within the
scope of their employment, Plaintiff had no claim for negligent
training and supervision "in light of this concession"); Griffin
v. City of New York, 287 F. Supp. 2d 392, 397-398 (S.D.N.Y. 2003)
(same); see also Sun Min Lee v. J.B. Hunt Transp., Inc., 308 F.
Supp. 2d 310, 313 (S.D.N.Y. 2004) (holding that "where an

employer has admitted that the employee acted within the course and scope of employment, evidence of negligent hiring, training, supervision or retention becomes unnecessary, irrelevant and prejudicial.").

Here, the City concedes that the Defendant police officers were acting within the scope of their employment. (Defs.' Mem. Law at 8 ("[T]he City has not denied that the individual defendants were acting within the scope of their employment.").) Accordingly, Plaintiffs' state law claim is barred as a matter of law.

In light of Defendants' concession, summary judgment as to this claim is granted. Because the Court grants Defendants' motion for summary judgment on this claim, it does not address the question of whether or not Plaintiffs' notices of claim were deficient.

## III.  CONCLUSION

For all of the previously discussed reasons, Defendants' motion for partial summary judgment is DENIED as to all four Plaintiffs' false arrest claims for grand larceny auto; and summary judgment is GRANTED to Plaintiffs on their false arrest claims for grand larceny auto; Defendants' motion for summary judgment is GRANTED on both Plaintiff Rowley's false arrest claim

for reckless endangerment in the first degree and Plaintiff
Rowley's malicious prosecution claim; and Defendants' motion for
summary judgment is GRANTED on Plaintiffs' negligent hiring,
training, and retention claim.  As to the surviving claim of
assault and battery, the parties are to adhere to the following
pre-trial submissions dates: Joint Pre-Trial Statement ("JPTS"),
Requests to Charge, Proposed Voir Dire, and Memoranda of Law
addressing those issues raised in the JPTS, are to be filed no
later than sixty days (60) from the date of this Memorandum and
Order; and Responses to the Memoranda are to be filed no later
than ninety days (90) from the date of his Memorandum and Order.
All submissions shall be in accordance with the Court's
Individual Practices.


SO ORDERED.

Dated:   New York, New York
         September 29, 2005

                                    _Deborah A. Batts_
                                    DEBORAH A. BATTS
                                    United States District Judge